596 So.2d 849 (1992)
Mary Ann CHIAPPETTA wife of Thomas Vallot, III
v.
Thomas VALLOT, III.
No. 91-CA-1597.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1992.
Rehearing Denied April 22, 1992.
Charles J. Ballay, Cynthia Davidson, Ballay & Braud, Belle Chasse, for plaintiff-appellee.
Stephen V. Vallot, Kenner, for defendant-appellant.
Before SCHOTT, C.J., and KLEES and WARD, JJ.
SCHOTT, Chief Judge.
Appellant, Thomas Vallot, III, and his divorced wife, Mary Ann Vallot, amicably resolved all of their differences over the partition of their community property except with respect to the division of survivors' benefits in his retirement and pension plan. From a judgment which allocated 96% of the benefits to Mary Ann and 4% to his present wife, Thomas has appealed.
Thomas and Mary Ann were married in 1955 and divorced in 1989. The community of acquets and gains was dissolved on December 22, 1988. In May 1989, Thomas remarried, and on July 1, 1990, he retired. The parties agreed to divide his pension of $2,030.50 on the basis that 96% was earned during the existence of the community and 4% after it was dissolved. This was generally in accordance with the formula approved in Sims v. Sims, 358 So.2d 919 (La.1978). Consequently, 48% of the pension was allocated to Mary Ann and 52% to Thomas.
The pension plan provides that upon the death of the retired employee his surviving spouse is to receive 50% of his retirement benefit. The question is whether Mary Ann's pension would be reduced by 50% upon Thomas' death leaving 50% of Thomas' present pension for his present wife or whether Mary Ann's pension would remain the same leaving just 2% for the present wife. The trial court adopted the latter position.
In reaching this conclusion the trial court reasoned as follows:
.... The annuity was computed at the time of the termination of the employment of Thomas by Freeport-McMoran and, at that time, only 4% of the funds were not community in nature. Thus, to allow Thomas' new wife to receive 52% of that annuity while limiting Mary Ann to 48% would be an injustice and would totally ignore Mary Ann's vested and legally recognized community interest in her ex-husband's retirement benefit.
This reasoning is flawed because the court failed to recognize that Thomas' 52% consists not only of his 4% which was outside of the community, but also his half of the community itself to which Mary Ann *850 has no more claim than to his separately earned pension rights.
When the community was partitioned the parties agreed that 96% of the pension plan belonged to the community with the remaining 4% being Thomas' separate property. This is so because the pension plan was a part of Thomas' earnings during over thirty-three years when the community existed and only one and one half years after. Mary Ann's share of the community included her one-half of 96% of the pension plan. Consequently, she now receives 48% of the present pension.
The amount of the death benefit is 50% of the pension regardless of the amount. This is the amount available for distribution in this case to Mary Ann for her half of the community and to Thomas' survivor with respect to his half of the community as well as the 4% which was earned by him after dissolution of the community. Consequently Mary Ann will be entitled only to 50% of her 48% interest in the plan upon Thomas' death.
Accordingly, the Qualified Domestic Relations Order is amended to provide that Mary Ann Chiapetta Vallot, as alternate payee, is entitled to 48% of the Qualified Survivor Annuity. All costs of this appeal are taxed against Mary Ann Chiappetta.
AFFIRMED AND AMENDED.